UNITED STATES of America
v.
George William SAWYER
and
Garlan Euel Markham, Jr.
Cr. No. 20883.

United States District Court
E. D. Pennsylvania.
Jan. 11, 1963.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., Edwin C. Brown, Jr., Robert J. Stubbs, for Dept. of Justice, Washington, D. C., for plaintiff.

John F. Doyle, William R. Rafferty, Washington, D. C., Edward J. Quinn, of counsel, Philadelphia, Pa., for defendants.

JOSEPH S. LORD, III, District Judge.

Defendants have been indicted in a nine count indictment for violation of Title 18 U.S.C.A. §§ 281, 201, 641, 793 (d), 2(a) and 371. Speaking generally, and without reference to the specific sections involved, the indictment charges that Sawyer, an employe of the Department of the Navy, unlawfully obtained for and delivered to Markham certain Navy documents and publications relating to equipment involved in proposed and future Navy procurement contracts. Markham, self-employed as a manufacturer's representative, used such documents and other advance information furnished him by Sawyer to assist in obtaining government contracts on behalf of manufacturers. Markham is alleged to have paid Sawyer in cash and property.

Defendant Markham (hereafter called "defendant") has moved: (1) to suppress certain evidence; (2) to dismiss the indictment on the ground that it was procured by the use of illegally obtained evidence; (3) in connection with the motion to dismiss, to inspect grand jury minutes or, in the alternative, to have the court inspect said minutes to show the source of the indictment.

## I. THE MOTION TO SUPPRESS

We have been told that in connection with an indictment similar to this in the District of Columbia, involving defendant Markham and another defendant (not Sawyer), the court denied a motion to suppress. We have not had the benefit of that court's reasoning, nor do we know what arguments were presented to it. We are satisfied, however, that this motion must be granted.

These are the operative facts:

The evidence which defendant seeks to suppress was seized by the F.B.I. in defendant's home in Virginia on June 3, 1961, pursuant to a search warrant. Included in the seized items were, among other things, a large number of Government documents and publications, many of which were marked "confidential". Defendant contends that the affidavits supporting the search warrant show on their face a lack of probable cause to search.

Two affidavits were executed on June 2, 1961, before the United States Commissioner for the Eastern District of Virginia, the district in which defendant's home was located. One, by F.B.I. Agent Richardson, recited that a confidential informant, formerly a Justice Department employe and at the time a business executive "who is believed to be reliable, has furnished an affidavit to a special agent of the Federal Bureau of Investigation stating, in substance, that on February 15, 1961 * * *" he had met Markham pursuant to a previous appointment at the Washington Airport and had gone with him to his home. Richardson's affidavit continues:

"While en route from the airport to Markham's residence, Markham stated to the informant that he had formed the Washington Procurement Consultants, Inc., located at his home address, 103 Leroy Place, Pine Ridge, Fairfax County, Virginia, and that this corporation had been formed for the purpose of handling payoffs to government personnel. Markham stated to the informant that he, Markham, had access to information from the various defense agencies of the United States Government. On arriving at Markham's

residence at 103 Leroy Place, Pine Ridge, Fairfax County, Virginia, Markham took the informant into his house. There he showed the informant various government documents including classified items from the Avionics Section of the Bureau of Weapons, Navy Department, identified by the following markings:

"1.  'AN/ALD 2
    Bu WEPS
    6–61 DEL 62'
"2.  'NA/AQA 3–34'
"3.  'ASR 3' "

Richardson's affidavit also states that a Navy Commander Holt informed an F. B.I. representative that the above manuals were classified "confidential", and that as of February 15, 1961, no copies of those manuals had been furnished to potential suppliers of bids.

The second affidavit, executed by Agent Kingsbury of the Office of Naval Intelligence, merely states that he observed the meeting at the Washington Airport on February 15, 1961, between Markham and the informant, and that the two drove off in Markham's car.

█ It will be seen that, although the affidavits were given only the day before the search of June 3, the observations underlying the affidavits were made on February 15,—an interval of 107 days. Clearly, the probable cause which must exist to justify the issuance of a search warrant must exist at the time of issuance and not at some earlier time: United States v. Nichols, 89 F.Supp. 953 (W. D.Ark., 1950). We have found no case which has sustained a search warrant where the supporting affidavits were based on observations made more than 30 days previously: see cases collected in 162 A.L.R. 1406.

In Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 79 L.Ed. 260 (1932), a United States Commissioner issued a search warrant on July 6 based upon an affidavit made the same day. The warrant was not executed. The warrant was brought back to the Commissioner, the date was changed to July 27 and the warrant was "re-issued". Under the statute (18 U.S.C.A. § 611), a search warrant not executed and returned within ten days became void, so that the original warrant of July 6 was void under that explicit provision. The Government argued, however, that it should be regarded as a new warrant under which the search could be lawfully made. In rejecting this contention, the Court said, at page 211, 53 S.Ct. at page 140:

" *  *  *  The issue of a second warrant is essentially a new proceeding which must have adequate support. *  *  *  The proof supplied must have appropriate relation to the application for the new warrant and must speak as of the time of the issue of that warrant. The commissioner has no authority to rely on the affidavits which have sole relation to a different time and have not been brought down to date or supplemented so that they can be deemed to disclose grounds existing when the new warrant is issued. The new warrant must rest upon a proper finding and statement by the commissioner that probable cause then exists. *  *  * "

It must be assumed that the commissioner in Sgro had before him the affidavit of July 6 when he "reissued" the warrant. But, even though only 21 days had elapsed, since the affidavit had "not been brought down to date or supplemented", it was held insufficient to provide a basis for probable cause. The information upon which the warrant here was issued was gleaned by an informant 107 days before the search.

█ There is a distinction between an affidavit made at the time the warrant issues relating to prior observations, and an affidavit of immediate observations which was given sometime in the past. In the former, the issuing officer has the opportunity to examine the affiant and reach a conclusion as to whether reasonable cause exists to believe that the conditions still exist. In the latter, there is no equivalent opportunity for such de-

termination: cf. Sgro v. United States, supra. So also, even though the affidavit be given at the time of or close to the search, where the affiant is not the observer of conditions chronologically remote and who therefore cannot be examined, no such opportunity for updating is presented.

If the informant here had been the actual affiant and had given an affidavit on February 15 that affidavit would not support a warrant issued on June 2. Sgro v. United States, supra. And in actual substance, that is the case here. The affidavit in this case was based in part upon what the affiant was told by an agent who had, in turn, been told by an informant of what the informant had seen on February 15. The remainder was based upon what the affiant had been told by the agent who had been told by informant of what the informant had been told by the defendant on February 15.

The only basis in the affidavit for accepting this double and triple hearsay is the allegation that the informant "is believed to be reliable". There is no allegation of previously reliable information and no corroboration from other sources of information. There is no allegation that defendant was a known briber or payoff man.

In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), a warrant issued upon an affidavit based on hearsay was sustained. However, the Court said, at page 271, 80 S.Ct. at page 736:

" * * * Thus we may assume that Didone had the day before been told, by one who claimed to have bought narcotics there, that petitioner was selling narcotics in the apartment. Had that been all, it might not have been enough; but Didone swore to a basis for accepting the informant's story. The informant had previously given accurate information. His story was corroborated by other sources of information. And petitioner was known by the police to be a user of narcotics. Corroboration through other sources of information

reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to scepticism than would be such a charge against one without such a history. * * * "

In Application of Houlihan, 31 F.R.D. 145, at page 149 (N.D., 1962), the court said:

" * * * Finally, there is the question of whether there was probable cause upon which the warrant could issue. The Judge of the Cass County Court, in issuing the search warrant, relied upon the facts set forth in the special agent's affidavit. Although hearsay evidence may be considered, there must be substantial basis for crediting the information. Previous reliable information from the same source would provide substantiation. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. Here there was no substantial basis given for crediting the hearsay evidence save and except the bare statement of the special . agent that he considered the information reliable. This I consider insufficient. * * "

Not only was there here no asserted facts to justify a belief in the informant's reliability, but there was no opportunity, by examination, to bring his observations "down to date". The fact that defendant had formed a business as of February 15 furnishes no reasonable ground for belief that he was still in it on June 3, or, if he was, that it was still illegal, or, if it was, that he still had illegal possession of Government documents. There is not even an allegation that the affiant, or anyone else, had reasonable cause to believe that the illegal activity still continued as of June 2.

The combination of the unprecedented lapse of more than three months and the hearsay, and hence unexaminable nature of the information, lead us to conclude that there was lack of probable cause for the issuance of the warrant. The motion to suppress must be granted.

## II. THE MOTION TO DISMISS AND TO INSPECT GRAND JURY MINUTES

 Defendant's motion to dismiss is based on his contention, considered and upheld above, that the evidence taken from his home was seized in violation of his constitutional rights and that since the indictment was procured and based upon such evidence, the indictment must be dismissed. Defendant urges that if the Government does not concede the use of this evidence before the grand jury, then he should be allowed to inspect the grand jury minutes or that the court should inspect them to demonstrate the basis of the indictment.

In Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Court held that the evidence underlying an indictment may not be considered, for whatever may appear, the indictment may not be dismissed. The Court said, 350 U.S. at 363, 76 S.Ct. at 408:

" * * * If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more. * * * "

Although Costello concerned merely the presentation of no more than hearsay testimony to the grand jury, "the breadth of the declarations made by the Court" (Burton, J., concurring, 350 U.S. at 364, 76 S.Ct. at 409) are such that, as we understand that opinion, we are proscribed from examining the grand jury proceedings despite what we feel is a virtual certainty that we would find use made of the now suppressed evidence. See also Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

The motions to dismiss and to inspect the grand jury minutes will be denied.

Defendant Markham has also moved to dismiss Counts VI and VII of the indictment on the ground of duplicity. We have not yet heard oral argument on this motion, and if the Government intends to pursue this case an argument will be scheduled.

### ORDER

AND NOW, January 11, 1963, IT IS ORDERED that the motion of the defendant Markham to suppress the evidence is granted; the motions to dismiss the indictment, or in the alternative, to inspect the minutes of the grand jury are denied.