Samuel **ROSENCRANZ**, Defendant,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

Anthony **DiPIETRO**, Defendant,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

**Nos. 6594, 6611.**

United States Court of Appeals
First Circuit.

Heard Dec. 6, 1965.

Decided Feb. 7, 1966.

Joseph J. Balliro, Boston, Mass., for appellant Samuel Rosencranz.

Casper Tevanian, Portland, Me., for appellant Anthony DiPietro.

William E. McKinley, U. S. Atty., with whom David G. Roberts, Asst. U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

These appeals arise from the joint trial and conviction of two alleged conspira-

tors indicted for the operation of an illegal still in violation of federal internal revenue laws. The critical issue is whether there was probable cause to issue a search warrant.

### I

On March 24, 1962, prior to 3 a. m., Richard K. Weller, Investigator-in-Charge of a branch office of the Alcohol Tax Division of the U. S. Treasury Department, presented and executed before a U. S. Commissioner an affidavit for a search warrant, alleging that he had reason to believe that on certain farm premises on Ash Swamp Road in Scarborough, Maine, were being concealed mash, distillation apparatus, and non-tax paid alcohol, in violation of 26 U.S.C. § 5601.[1] The warrant was issued and, at 5:45 a. m., the same day, Weller and other officers entered the barn on the premises, found a still, seized equipment and supplies used in the making of alcohol, and arrested two men (not appellants) found at the site.

The validity of the search warrant was attacked by appellants in motions to suppress the evidence resulting from the search. The government, in turn, challenged their right to attack on the dual grounds that neither the persons nor the property affected by the search fall within the protection of the Fourth Amendment. After evidence and argument, the district court denied the motions in an opinion dated May 19, 1965, D.Me., 241 F.Supp. 933.

As to standing, we hold that appellants can invoke the Fourth Amendment on the undisputed fact that appellant DiPietro was the legal owner of the premises. While he was as absentee, reluctant, unknowledgeable, and uninterested an owner as may be imagined,[2] he was still the only holder of legal title to the premises. He was also the owner of

---

1. The affidavit reads as follows:

 AFFIDAVIT FOR SEARCH WARRANT

 Before Herbert H. Sawyer, 443 Congress Street, Portland, Maine
 The undersigned being duly sworn deposes and says:
 That he has reason to believe that on the premises known as the one and one-half story wooden frame dwelling house and barn, formerly owned by one Bovine, located on the north side of Ash Swamp Road, three-tenths of a mile easterly from the intersection of Lincoln Road and Ash Swamp Road, Scarborough, Maine, in the Southern District of Maine, there is now being concealed certain property, namely mash fit for distillation, apparatus for the purpose of distillation and nontax paid alcohol which are held in violation of Title 26, USC Sec. 5601, (a), (1), (6), (7), (8), (12);
 And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:
 1. Information given anonymously to the Affiant that the aforementioned materials are being held on said premises,
 2. The detection of a strong odor of mash outside the premises by the Affiant.
 (s) RICHARD K. WELLER
 Criminal Investigator,
 U. S. Treasury Department

 Sworn to before me, and subscribed in my presence, March 24, 1962
 (s) HERBERT H. SAWYER

2. The evidence shows that while DiPietro had purchased the property seven months previously, he had never recorded his title, forgot what he did with his deed, never made monthly mortgage payments, and never took out insurance, arranged for utility services, or paid taxes. While he had driven by the property, he had never set foot on it, moved personal property to it, rented it, made any effort to rent it, leased it, given permission to anyone to use it, or knew that anyone was occupying it. He declared himself not interested in the house or buildings, which were "in poor shape" and were of "no value" to him. His avowed purpose in purchasing the property (under the assumed name of John Fino) was to raise horses and Christmas trees, neither of which objective was ever pursued. For almost six months prior to the search, since September, he was attempting to find a purchaser, although he did not talk with a broker, or erect a "for sale" sign or advertise the property. He testified that what had changed his mind about the use to him of the property was that "I had attempted to get into the horse business and maybe cultivate some Christmas trees on the property, and I had the few dollars and within a few weeks I had lost it all * * *."

such distilling apparatus as, under the applicable law as to fixtures, had become part of the real estate. And we have seen no authority for the proposition that the owner of premises who has not given exclusive use to another does not have standing. See Jones v. United States, 1960, 362 U.S. 257, 265, 80 S.Ct. 725, 4 L.Ed.2d 697. If DiPietro has standing, then, under McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, appellant Rosencranz also shares in the shelter of the Fourth Amendment.

■ That such an absentee holder of legal title as appellant DiPietro should have standing to invoke the Fourth Amendment does not offend us as creating constitutional rights by "subtle distinctions developed in the law of real property", as government counsel argues. As this case demonstrates, the purchase and ownership of real property with very little more can be significant links involving the owner in the chain of an alleged conspiracy. It does not seem unfair to allow the fact of ownership, which is used by the government against a defendant, to be used by that defendant to invoke constitutional rights.

■■ The government also contends that the premises searched—the barn—do not come within the protection of the Fourth Amendment. This amendment speaks of the "houses" of persons, which word has been enlarged by the courts to include the "curtilage" or ground and buildings immediately surrounding a dwelling, formerly usually enclosed. The reach of the curtilage depends on the facts of a case. In this case the government points out that appellants have not supplied us with more than the most meager facts (see footnote 1, supra). The only additional factual description is as follows. The Treasury agent who led the search said, "it was a small farm with dwelling house and barn to the left as you faced the premises". He also testified that tracks of vehicles and footprints were visible on the snow, leading to both house and barn; he decided to enter the barn first because the signs of traffic were somewhat heavier. Other witnesses

said there was a driveway between the barn and the dwelling house. This suggests propinquity and absence of separating barriers. While the evidence before us is sparse, it is at least as persuasive as that in Walker v. United States, 5 Cir., 1955, 225 F.2d 447, where a barn was held within the curtilage, although it was seventy to eighty yards from a house, and was surrounded by a fence. See also Taylor v. United States, 1931, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; United States v. Mullin, 4 Cir., 1964, 329 F.2d 295. We hold that the premises searched were within the coverage of the Fourth Amendment.

The search warrant is attacked for the following alleged defects in the underlying affidavit: that anonymous information is not an adequate basis; that the affiant was not found qualified to know the odor of mash; that the affiant did not identify the odor of mash as emanating from the premises; and that the times of receipt by the affiant of information from his informant and of his detection of the odor were not stated in the affidavit.

We shall consider these arguments against the background of constitutional policy and guidelines to carry out that policy, which have evolved as the courts have wrestled with the problem of respecting both the constitutional rights of individuals and the reasonable needs of law enforcement. The policy is to encourage officers of the law to seek to the fullest extent feasible the objective judgment of a magistrate on the probability that a crime is being committed before permitting entry on the property of private citizens.

■ The device of this intervening step between clues and search is calculated to substitute the inferences of a neutral and detached magistrate for the inferences of a committed officer in the heat of ferreting out crime. Johnson v. United States, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436.

■ This policy, in the interests of the civil liberties of all the people protected by the Fourth Amendment, is bul-

warked by rather precise supporting guidelines, which may bear heavily on individual defendants. These guidelines include the following: evidence need be only so much as to persuade a man of reasonable caution to believe a crime is being committed, Brinegar v. United States, 1949, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States, 1925, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543; the finding of "probable cause", while demanding more than mere suspicion, Draper v. United States, 1959, 358 U.S. 307, 311–312, 79 S.Ct. 329, 3 L.Ed.2d 327, requires less evidence than would justify conviction, Locke v. United States, 1813, 7 Cranch 339, 348, 3 L.Ed. 364, and less than would justify an officer in making a search without a warrant, Johnson v. United States, supra, 333 U.S. at 13, 68 S.Ct. 367; the evidence itself need not be legally competent in a criminal trial, Draper v. United States, supra, 358 U.S. at 311, 79 S.Ct. 329, and may in fact be hearsay, Jones v. United States, supra, 362 U.S. at 272, 80 S.Ct. 725, so long as the magistrate is informed of some underlying circumstances supporting the affiant's conclusion and his belief that any informant involved was credible or his information reliable, Aguilar v. State of Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723; the commissioner is entitled to draw reasonable inferences from the facts contained in the affidavit based on his experience in such matters, Irby v. United States, 1963, 114 U.S.App.D.C. 246, 314 F.2d 251, 253, cert. denied, 374 U.S. 842, 83 S. Ct. 1900, 10 L.Ed.2d 1064, while only the information in the affidavit is relevant in reviewing the magistrate's judicial action issuing a warrant, United States v. Casino, 2 Cir., 1923, 286 F. 976, such an affidavit must be tested with a common-sense, nontechnical, ungrudging, and positive attitude, United States v. Ventresca, 1965, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d, 684; and, finally, the commissioner's finding "is itself a substantial factor", United States v. Ramirez, 1960, 2 Cir., 279 F.2d 712, 716, cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74, and in marginal cases, where

there is doubt whether an affidavit demonstrates the existence of probable cause, the resolution should be "largely determined by the preference to be accorded to warrants", United States v. Ventresca, supra, 380 U.S. at 109, 85 S.Ct. at 746.

Following this constitutional policy and these judicial guidelines, particularly as urged by Ventresca, we shall now consider the alleged defects in the affidavit.

■ We are not troubled by affiant's receipt of information from an anonymous informant. The case before us is, in this respect, stronger than both *Aguilar* and *Jones,* where the only basis for the warrant was hearsay information. In this case the hearsay evidence is buttressed by the personal observation of the affiant. It is analogous to *Draper,* where hearsay information which had no earmarks of credibility was confirmed by the observations of the officer.

Nor are we concerned by the state of the evidence before the magistrate as to the odor of mash outside the premises. The affiant in this case, while described in the affidavit as a "Criminal Investigator", was actually the Investigator-in-Charge of a local office of the Alcoholic Tax Division of the Treasury Department. In either event, such credentials and the distinctive odor of mash have passed the surveillance of many courts. See, e. g., Monnette v. United States, 5 Cir., 1962, 299 F.2d 847. Cf. Chapman v. United States, 1961, 365 U.S. 610, 81 S. Ct. 776, 5 L.Ed.2d 828; Johnson v. United States, supra, 333 U.S. at 13, 68 S.Ct. 367; Steeber v. United States, 10 Cir., 1952, 198 F.2d 615, 33 A.L.R.2d 1425. Indeed, we have seen no case standing for the proposition that a magistrate was unreasonable in considering a person in affiant's position qualified to detect the odor of mash.

■ But appellants go beyond the qualifications of the affiant and the distinctive nature of the odor, and say that a mere allegation that the odor was detected "outside the premises" was defective in failing to say that the odor "emanated from the premises". In the case

before us, the magistrate could have reasonably given weight to two factors. The first is that the premises described in the warrant were a house and barn on Ash Swamp Road, three-tenths of a mile from an intersection. He could conclude that the area was rural and sparsely populated. The second is that the odor was described as a "strong" one. The magistrate could therefore properly conclude that the odor came from the premises described rather than from adjoining property. This was not a congested metropolitan area, where odors could conceivably originate in any one of a number of dwellings. In Monnette v. United States, supra, 299 F.2d at 849 n. 3, an affidavit was upheld which said, " * * * I distinctly smelled the odor of fermenting mash emanating from these premises."

To make much of the words "fermenting" and "emanating from" would be to engage in the "elaborate specificity" enjoined by Ventresca, supra, 380 U.S. at 108, 85 S.Ct. 741.

This brings us to the most serious defect in the affidavit—the absence of any averment as to the time when the affiant received information from his anonymous informant or as to the time when affiant detected the odor of mash. Nor is there anything in the affidavit which hints of time except the use of the present tense in connection with the informant's report to affiant.

■ There is little question but that, before Ventresca, supra, this defect would have been fatal. We summarize the authorities in the margin.[3] The very

3. The basic principle that there be enough basis for the magistrate to conclude that probable cause exists at the time he issues his warrant has been stated in Sgro v. United States, 1932, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260. In Poldo v. United States, 9 Cir., 1932, 55 F.2d 866, the court, after commenting that the affidavit lacked a date of observation, said, 55 F.2d at 868, "Time of the affidavit's observations, which are set forth as constituting probable cause that a crime has been committed, is of the essence of the affidavit." In Kohler v. United States, 9 Cir., 1925, 9 F.2d 23, the court referred to the failure to fill in the spaces for the day and month of alleged possession and sale of liquor as one of the "glaring" defects in the affidavit. In Staker v. United States, 6 Cir., 1925, 5 F.2d 312, an affidavit was silent as to time. The court said, 5 F.2d at 314, "So far as the affidavit shows, the officer might have smelled the fumes months before the affidavit was made." In Conti v. Morgenthau, S.D.N.Y., 1964, 232 F.Supp. 1004, the court held invalid an affidavit alleging the placing of wagers on certain dates at an apartment and two undated visits of defendant to the apartment. It pointed out the lack of connection of the visits and the wagers, the failure to allege dates "or indeed that the visits were recent". In United States v. Bosch, E.D.Mich., 1962, 209 F.Supp. 15, an affidavit silent as to when surveillance was made, was held invalid. While not the only reason for its decision, the court indicated that the absence of time allegation would have been a sufficient basis. In Williams v.

Commonwealth, Ky., 1962, 355 S.W.2d 302, where the affidavit alleged that defendant "has in his possession at this time beer and whiskey * * * for the purpose of sale", the court held that it was defective for not disclosing when the underlying observation was made. In Odom v. State, 1932, 121 Tex.Cr.R. 209, 50 S.W.2d 1103, where the affidavit alleged that certain "equipment is being used", the court held it defective for not revealing that the conduct occurred within a reasonable time. In People v. Musk, 1925, 231 Mich. 187, 203 N.W. 865, an affidavit that affiant "has seen" certain things was held invalid for lack of a time averment.

Waggener v. McCandless, 1946, 183 Tenn. 258, 191 S.W.2d 551, 162 A.L.R. 1402, is not in conflict with this line of cases. While a precise date of receiving information was not alleged, the affidavit stated that affiant had "just received" the information, and the court accordingly upheld the affidavit.

Opposing this array of authority, we have found only two cases upholding an affidavit where no indication of time of receiving information or observation appeared on its face. In Hanson v. State, 1933, 55 Ok.Crim. 138, 26 P.2d 436, the court held it sufficient that the undated observations were made by the affiant and that the allegation of commission of the offense was stated in the present tense. In People v. Warner, 1923, 221 Mich. 657, 192 N.W. 566, an affidavit saying that the affiant "has seen" and "has smelt liquor", with no allegation as to time, was held sufficient. There seems

fact that there are not more cases involving affidavits without an averment of time of observation may be taken as evidence of the wide acceptance by public officers and magistrates of this requirement.

■■■■ The difficult question before us is whether *Ventresca* compels or permits our upholding of the search warrant in these appeals. The Supreme Court made it perfectly clear that while underlying circumstances must be recited, affidavits should be construed in a commonsense manner and that doubtful cases should be resolved in favor of the warrant. The district court after calling for argument specifically addressed to the implications of *Ventresca,* and being guided by its reading of that case, denied the motions to suppress evidence.

It reasoned that the first fact in the affidavit—the information received from the informant—"must reasonably be construed as speaking as of the date of the affidavit, for the present tense is used". It reasoned also that the second fact—the detection of a strong odor of mash—if read in a commonsense way, is elliptically tied both to the present tense in the preceding statement and to the affiant's allegation in the body of the affidavit that he has reason to believe that the described property "is now being concealed" on the premises.

Additionally, three other arguments can be made. First, we observe that the officer, having called at a police barracks between 3 and 3:30 a. m., on March 24, 1962, with the warrant, must have presented his affidavit to the Commissioner between midnight and 2 or 3 a. m. We could reason that no responsible law officer would disturb a magistrate at such an hour on the basis of stale information and observation. Secondly, we could make the distinction between the operation of distilling apparatus plus the strong odor of mash as implying much more of a continuing situation than, for example, would exist in connection with an allegation as to the harboring of stolen property, which might reasonably be in transit and in the process of dispersion. See United States v. Williams, 6 Cir., 1965, 351 F.2d 475. Finally, we could make a distinction between affidavits where the affiant himself has made observations and is available to the magistrate to fill in gaps and where the sole observations are made by another than the affiant. See United States v. Sawyer, E.D.Pa., 1963, 213 F.Supp. 38.

But having made as strong a case for the affidavit as we think can be made, we conclude that it is not enough. The present tense is suspended in the air; it has no point of reference. It speaks, after all, of the time when an anonymous informant conveyed information to the officer, which could have been a day, a week, or months before the date of the affidavit. To make a double inference, that the undated information speaks as of a date close to that of the affidavit and that therefore the undated observation made on the strength of such information must speak as of an even more recent date would be to open the door to the unsupervised issuance of search warrants on the basis of aging information. Officers with information of questionable recency could escape embarrassment by simply omitting averments as to time, so long as they reported that whatever information they received was stated to be current at that time. Magistrates would have less opportunity to perform their

to have been no issue raised as to the lack of averment of time.

Corroborating the traditional interest of the courts in being able to fix the time of observation of the underlying facts asserted in affidavits are the many cases where the validity of the warrant was determined by the proximity or remoteness of the events observed. See Schoeneman v. United States, 1963, 115 U.S. App.D.C. 110, 317 F.2d 173 (107 days— invalid); Irby v. United States, supra, (8 days—valid); Dandrea v. United States, 8 Cir., 1925, 7 F.2d 861 (42 days—invalid); United States v. Sawyer, D.C. 1963, 213 F.Supp. 38 (107 days—invalid); United States v. Long, D.D.C., 1959, 169 F.Supp. 730 (11 days—valid); United States v. Allen. E.D.Ky., 1957. 147 F. Supp. 955 (16 days—valid); United States v. Nichols, W.D.Ark., 1950, 89 F.Supp. 953 (21 days—invalid).

"natural and detached" function. Indeed, if the affidavit in this case be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for them.

The other arguments are equally unpersuasive. In the instant case we may well say that the early morning application for the warrant reflected a sense of immediacy. But to state the proposition that an after-hours application to a magistrate can cure the lack of averment as to time of observation is to deflate it as a reasonable ground for believing probable cause exists. For example, were we to rely on this reasoning, a magistrate could, in the future, base his belief that a crime was being committed on the fact that the officer-affiant came to him in a state of breathless excitement, even though at high noon.

No more persuasive is the argument that the operation of a still implies continuity, and therefore the likelihood of accuracy of information gathered sometime in the past. If this argument were accepted, there would be relaxed time requirements for all crimes except the most episodic—and these are the very ones to which the law accords an exception to the general requirement of a warrant. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

 Such attempts at justification with all the uncertainty involved in reasoning from facts outside the warrant, underscore the wisdom of treating the averments of an affidavit like pleadings in a cause. United States v. Casino, supra.[4] It is one thing to expect the magistrate to give a commonsense reading to facts set forth and to draw inferences from them. It is quite another thing to expect the magistrate to reach for external facts and to build inference upon inference in order to create a reasonable basis for his belief that a crime is presently being committed.

 If the magistrate must observe certain minimum requirements, so must the officer-affiant. He must set forth the basis for the magistrate's inferences with enough precision so that, if the affidavit is subjected to an attack for lack of probable cause at a subsequent hearing, the trial judge will be ruling on the reasonableness of inferences based on the same underlying circumstances as confronted the commissioner. But suppose a commissioner, on the basis of an affidavit like that in this case, were to infer that both affiant's information and observation were recent, while at a hearing on a motion to suppress, affiant states that both information and observation were several months old. There would, in fact, have been no basis for issuing the warrant, and yet the affidavit would have been accurate and the affiant would be in no danger of prosecution for its falsity. To create the possibility of ancient information parading beneath the protective mask of a bland, "present tense" warrant would not, in our opinion, be in the interests of proper law enforcement or justice.

 Nor would the cause of improved judicial administration be served by increased reliance on motions to suppress evidence in order to expose the extent to which an affidavit, while true, might still be misleading. Such deferral of this issue would shift the responsibility of passing on the officer's judgment from the commissioner to the trial court. To the extent this were done, the function of the warrant-issuing magistrate would wither away to the point of being a vestigial formality.[5]

4. In *Casino*, 286 F. at 978, Learned Hand, J., wrote, "While * * * he [the commissioner] must decide after hearing whether on all the facts there were reasonable grounds for the warrant, that does not dispense with the necessity for allegations in the affidavits themselves, which, if true, show a self-subsisting ground for the issuance of the warrant.

It is not enough that on the hearing other grounds may appear, even though not upon evidence extracted by the search itself."

5. We are also mindful of the uncertain status of such hearings as a forum for exposing any falsity in the underlying circumstances. See Rugendorf v. United

As to the distinction between the standards of judging an affidavit based solely on an informant's observations and one where the affiant himself made observations and is therefore available for examination by the magistrate, we do not feel it should be carried so far as to dispense with the requirement of reasonably specific time averments. With a small amendment, both magistrate and officer could have remedied the defect in this case. We see no policy served which would relieve them of this minimal burden.

These difficulties lead us to inquire whether the common-sense policy articulated in *Ventresca* should be construed to relax the long standing, judicially recognized requirement for averments of time of observation of the underlying facts in an affidavit for a search warrant. In that case, this question was farthest from the minds of the Court since there were no fewer than eleven specific allegations of time. The Court was rather dealing with our concern over the problem of distinguishing among affiant's observation, hearsay, and hearsay on hearsay. We doubt that it would wish to weight the scales in favor of the warrant to the extent of abandoning the requirement of some reasonably specific allegation to give a magistrate a basis for deciding whether a crime was still being committed. In no cases relying on *Ventresca* which have come to our attention has such a major defect been waived.

While we might give lip service to principle and yet uphold the warrant as a "doubtful or marginal" case, we do not think this would be a service either to the conduct of law enforcement or the protection of citizens' rights. Such a disposition of this case would, we feel, needlessly enlarge the area of uncertainty and litigation.

We conclude that a combination of undated, conclusory information from an anonymous source and an undated general allegation of personal observation by the affiant, with no other reasonably specific clues to the time of their happening, is inadequate. We do not think this is being hypertechnical, legalistic, or insistent on a requirement of "elaborate specificity once executed by common law pleadings". Police officers have long been accustomed to the importance of time; to their credit, the overwhelming majority of affidavits have honored the requirement.

We are aware of the vast amount of painstaking care invested by the district court in two trials to date. Nevertheless, having carefully considered both precedent and policy, we are constrained to hold the affidavit and therefore the warrant, search, resulting evidence, and judgment invalid.

There is one other point raised by appellants which, in the event of another trial, ought to be resolved. Their contention is that the district court erred in admitting a transcript of testimony in a prior trial. This was testimony by one Broderick, a claims adjuster for the New England Telephone and Telegraph Company, that three long distance calls had been made on December 20, 1961 from a gas station in Massachusetts to Ash Swamp Road farm. These calls were relevant to the proof of appellant Rosencranz's participation in the alleged conspiracy. Subsequent to the prior trial, witness Broderick, admittedly not a permanent custodian of records of calls, had destroyed the records from which he had testified. At the trial below, the transcript of his prior testimony was read.

States, 1964, 376 U.S. 528, 531–532, 84 S.Ct. 825, 828, 11 L.Ed.2d 887, when the Court in dealing with a claim of falsity in an affidavit said:

"Petitioner attacks the validity of the search warrant. This Court has never passed directly on the extent to which a court may permit such examination when the search warrant is valid on its face and when the allegations of the underlying affidavit establish 'probable cause' * * *."

Cf. United States v. Bowling, 6 Cir., 1965, 351 F.2d 236, petition for cert. filed Dec. 20, 1965.

The appellants claim that they have been deprived of the right of cross-examination. But the witness had given the testimony in question at a former trial where parties and issues were the same and where full opportunity for cross-examination was afforded. While we do not condone the action of the witness in destroying records for which he was not responsible, no improper motive has been suggested and the prior testimony was of an objective reportorial nature not ordinarily suspect. We have no hesitation in saying the testimony was admissible. 5 Wigmore, Evidence, §§ 1370, 1371 (3d ed. 1940).

Judgment will be entered in each case vacating the judgment of the District Court, setting aside the verdict, and remanding the case for further proceedings not inconsistent with this opinion.