**UNITED STATES of America, Plaintiff,**

v.

**Charles Eddie ARMS, Defendant.**

**Cr. A. No. 6931.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Feb. 2, 1967.

John H. Reddy, U. S. Atty., Chattanooga, Tenn., John H. Cary, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

John F. Dugger, Morristown, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The defendant Charles Eddie Arms was charged by the Grand Jury with (1) the unlawful possession, custody and control of an unregistered distillery of moonshine whiskey, (2) unlawfully carrying on the business of a distiller without having given the required bond, (3) working unlawfully in an unposted distillery, (4) unlawfully making and fermenting mash fit for distillation and the production of distilled spirits at a place not permitted by law, and (5) the unlawful possession of tax-unpaid whiskey, all on June 6, 1966. He inter-

posed a motion for the suppression of evidence obtained in a search of the defendant's dwelling and residential garage, Rule 41(e), Federal Rules of Criminal Procedure, and, the Court approving, the defendant waived arraignment and a jury trial in writing with the consent of the United States attorney, Rule 23(a), supra, and pleaded not guilty to each of these alleged offenses. He was tried by the Court without the intervention of a jury on December 21, 1966. It was stipulated in open court that the action of the Court on the aforementioned motion would be dispositive of this action on its merits.

This prosecution arose from the receipt of incriminatory information by federal agents of the Alcohol and Tobacco Tax Division, Internal Revenue Service, Treasury Department, and the subsequent personal observations of these agents. Agent Harold K. Pike made oath thereafter before a United States commissioner that he had received information on May 27, 1966 " * * * from a proven reliable informant * * * " that the residential garage on premises which, it later developed, was being occupied by Mr. Arms, " * * * was being used as a mixing point for moonshine whiskey and that whiskey was being stashed in the residence house * * * "; further, that on " * * * June 5, 1966, I again received information from a different proven reliable informant that whiskey was being stored in the house and the garage. * * * " In lieu of seeking the issuance of a search warrant on this uncredited hearsay information, these officers drove past the suspected premises on what appeared to be a rural roadway in a motor vehicle, passing thereon the dwelling and within about 20 feet of the aforementioned garage.

According to one of the agents, William W. Lindsey, Jr., as these officers approached the garage, he detected the distinctive odor of moonshine whiskey and mash emanating from what he thought was the garage building; that the odor became progressively stronger as the vehicle came closer to the garage, and diminished retrogressively as the vehicle departed the immediacy of the garage; that they drove the vehicle about 75 yards past the garage to a barn, turned the vehicle around and experienced the same progressive and retrogressive presence of the significant odors on the return trip; and that the distinctiveness of such odors arises from the use of rubbing alcohol in the "proofing" of tax-unpaid whiskey prevalent in that particular vicinity.

Agent Pike left the scene and applied to a commissioner for a search warrant. In the aforementioned affidavit, Agent Pike added thereto this language: " * * * I have been an Investigator for more than four years. * * * On June 6, 1966, at about 4:30 p. m., I was at a point in the public road and about 20 feet from the garage located on the * * * [suspected] * * * premises when I detected the odor of whiskey coming from the direction of the garage. I am thoroughly familiar with the smell of whiskey." On the basis of this affidavit in its entirety, the Commissioner was satisfied that there was probable cause to believe that contraband was being concealed on the suspected premises, and he issued a warrant authorizing the agents to search same and seize any contraband found thereon as a result.

■ The initial question is whether the Commissioner abused and arbitrarily exercised his discretion in issuing the search warrant here involved on the basis of the affidavit of Agent Pike. Such a determination requires a testing of the affidavit offered to support a search warrant in a commonsense and realistic fashion, with no regard for the technical requirements of an elaborate specificity. United States v. Rollins, D.C.Tenn. (1966), criminal action no. 6909, Northeastern Division, Eastern District [unpublished].

The Commissioner was presented an affidavit by a person known by him to be charged with the enforcement of fed-

eral laws relating to the tax on illicit whiskey, who had no responsibility whatever in the area of dealings with tax-paid whiskey. Rosencranz v. United States, C.A.1st (1966), 356 F.2d 310, 314 [11]. The affidavit contained obviously hearsay evidence as to the use of the suspected premises for traffic in moonshine whiskey. It also included hearsay evidence as to the concealment thereon of whiskey.

■ "Despite earlier cases to the contrary,[1] it is now settled that, at least in the federal courts, hearsay evidence may provide the probable cause necessary for the issuance of a search warrant where a substantial basis for crediting the hearsay is presented. * * *" 10 A.L.R.3d 364, sec. 3; Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 707 (headnote 13). Here, the affidavit also included reasonable corroboration of the hearsay information received by the agents in the form of another matter within the affiant's own knowledge, see Draper v. United States (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, 332 (headnote 6), i. e., the detection of the odor of alcohol evidently emanating from the defendant's residential garage by an officer qualified in such matters. " * * * A qualified officer's detection of the smell of mash has often been held a very strong factor in determining that probable cause exists so as to allow issuance of a warrant. * * *" United States v. Ventresca (1965), 380 U.S. 102, 85 S.Ct. 741, 743, 13 L.Ed.2d 684 (headnote 5).

■■ Under the totality of the circumstances presented to the Commissioner by the affiant, the omission of the agent to state that the whiskey he detected by odor was tax-unpaid whiskey, does not justify the conclusion that the judicial officer did not have reasonable grounds to believe that at the time the affidavit herein was presented to him

the law was being violated on the suspected premises. Cf. United States v. Eisner, C.A. 6th (1962), 297 F.2d 595 [4–6]. This was a question of fact for the Commissioner, as a judicial officer, to determine. United States v. Nicholson, C.A. 6th (1962), 303 F.2d 330, 332 [3]. Absent this Court's finding on the peculiar circumstances of this case that the Commissioner's finding was arbitrarily made and was not supported by the evidence which was presented to him, this Court will not disturb that finding. Evans v. United States, C.A. 6th (1957), 242 F.2d 534, 536, certiorari denied (1957), 353 U.S. 796, 77 S.Ct. 1059, 1 L.Ed.2d 1137.

The final question presented, requiring special findings, Rule 23(c), supra, is whether the aforementioned corroborating evidence of alcoholic odor was obtained by the federal agents by trespassing on the curtilage of Mr. Arms. Contrary to the assertion of the affiant involved in the issuance of the search warrant, he and his fellow-officers were not on a "public" road, but on a private roadway which served the McNabb family farm, on which Mr. Arms resided, when they smelled mash and moonshine whiskey.

The defendant lived on premises rented from Jesse McNabb in the Wilsonville section of Cocke County, Tennessee. This realty was joined on the South (generally) by the property of Gray O'Neil. Running through the O'Neil real estate was a county-maintained road, which branched off the W. W. Jones Road, a more frequently traveled county-maintained road.

Seemingly somewhat typical of local governmental activities in Cocke County, Tennessee, the Quarterly County Court had adopted a rule that the county road authorities would not "rock" any rural road which did not serve one or more dwellings. It was 1,700 feet from the W. W. Jones Road to the Arms dwelling, and the latter was the only resi-

1. Including Sparks v. United States, C.A. 6th (1937), 90 F.2d 61; Worthington v. United States, C.A.6th (1948), 166 F.2d 557; and Merritt v. United States, C.A. 6th (1957), 249 F.2d 19.

dence on that branch road. Despite the fact that it was only 300 feet from the O'Neil-McNabb property line to the Arms dwelling, Cocke County authorities nevertheless maintained only the 1,400 feet of the branch road which divided the O'Neil property.

■ No witness controverted the fact that, from all appearances, the extension of the branch road from the aforementioned property line to the aforementioned barn was identical with the branch road maintained by Cocke County.[2] There was a driveway, also of similar appearance, which joined the extension of the rural road with the front doors of the garage, about 20 feet away. At no time were these agents off the extended branch road, so the defendant has not carried the burden of proving a trespass on his constitutionally-protected premises by the investigating officers. Cf. Evans v. United States, supra.

■■ An open field or wooded tract, where not a part of a farm home, is not a part of the curtilage. United States v. Whitmore, C.A. 6th (1965), 345 F.2d 28, 29 [11]. Generally speaking, curtilage has been held to include any buildings in close proximity to a dwelling, which are continually used for carrying on domestic employment, or such place as is necessary for family purposes. 25 C.J.S. 83; 4 Am.Jur. 93. Certainly, this extension of a county-maintained branch road cannot be considered a part of the curtilage of the Arms family. It results that the suppression motion of the defendant hereby is

Overruled.

It was undisputed that the defendant Charles Eddie Arms resided with his wife[3] in the aforementioned dwelling

and had actual possession of the McNabb farm property. The authorized and lawful search of his premises by the federal agents revealed that there was concealed in the residential garage a complete illicit distillery, including all the necessary parts and equipment for distilling spirits, and 8¼ gallons of tax-unpaid whiskey. Four still pots therein had been "mashed in" prior to the raid. There were no signs posted on the premises, indicating the presence thereon of a distillery.

Within the Arms dwelling, the officers discovered there concealed another gallon of tax-unpaid whiskey, a quantity of rubbing alcohol, and a mixing vat. Under the porch of the dwelling was found a set of still-pot burners. None of the foregoing immediate containers of whiskey had stamps on them, indicating the payment of the required tax and compliance with federal internal revenue laws.

■ From this evidence and the reasonable inferences flowing therefrom, the Court finds the defendant GUILTY as charged by the Grand Jury in counts one, two and five of the indictment returned against him on October 10, 1966. Beyond any reasonable doubt, Mr. Arms was in actual or constructive possession of the illicit distillery and tax-unpaid whiskey found on and within the premises he was renting, and was carrying on the business of a distiller without having given the required bond.

■ There is reasonable doubt, however, whether Mr. Arms ever actually worked in the aforementioned distillery or ever made the mash fit for distillation which the officers discovered in the still pots. Another person or other persons could have made the mash and done all the other work in and around

---

2. There was evidence that subsequent to this raid there was a chain across the roadway at the O'Neil-McNabb line, but the Court finds there was no such chain or other barrier present there on June 6, 1966 when these officers traversed the extended rural road past the garage aforementioned.

3. The search warrant was served on Mrs. Arms, the wife of the defendant. He was arrested about 5:20 o'clock, p. m., when he returned to his residence, on the day of the raid.

the distillery. There is no evidence that Mr. Arms did either. As to each of counts three and four, accordingly, the Court finds the defendant Charles Eddie Arms NOT GUILTY. He hereby is released from custody as to those counts only.

As to the Court's finding of his guilt on counts one, two and five of the aforementioned indictment, Mr. Arms is referred for presentence investigation. He will stand on his present bond until ordered to report for final judgment.