**Harry Carl SCHOENEMAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Garlan Euel MARKHAM, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 17395, 17396.**

United States Court of Appeals District of Columbia Circuit

Argued March 7, 1963.

Decided April 4, 1963.

See also D.C., 203 F.Supp. 840.

Mr. James J. Laughlin, Washington, D. C., for appellant in No. 17,395.

Mr. John F. Doyle, with whom Mr. William R. Rafferty, Washington, D. C., was on the brief, for appellant in No. 17,396.

Mr. George B. Searls, Atty., Dept. of Justice, with whom Mr. Robert S. Brady, Atty., Dept. of Justice, was on the brief, for appellee.

Mr. Kevin T. Maroney, Atty., Dept. of Justice, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and FAHY and WRIGHT, Circuit Judges.

WRIGHT, Circuit Judge.

Appellant Schoeneman was a small business procurement specialist in the Navy Department. Appellant Markham was a self-employed manufacturers' representative for smaller companies seeking Government contracts. In July, 1960, Schoeneman and Markham formed Washington Procurement Consultants for the purpose of representing small businesses interested in dealing with the United States Government, utilizing Schoeneman's inside information on Navy procurement. In the course of carrying on this business, Schoeneman supplied Markham with many classified documents dealing with future purchases by the Navy Department. In an attempt to interest one Heins in retaining Washington Procurement Consultants as his company's representative in Washington, Markham, on February 15, 1961, took Heins to his home and displayed to him the classified documents which Markham possessed. Unfortunately for appellants, Heins promptly passed this information on to the Federal Bureau of Investigation.

On June 2, 1961, an FBI agent appeared before a United States Commissioner and applied for a search warrant for Markham's home. The warrant was granted and the search revealed a plethora of highly incriminating evidence. Markham and Schoeneman were indicted and tried jointly. Markham was convicted of bribing a Government official.[1] Schoeneman was convicted of accepting a bribe[2] and converting Government property.[3] Both were convicted of conspiracy to commit the three specified offenses.[4]

Appellants' chief contention on appeal is that the fruits of the search of Markham's home should have been suppressed because there was insufficient showing of probable cause on June 2, 1961, to justify issuance of a search warrant.[5] The commissioner issued this search

---

1. 18 U.S.C. § 201.

2. 18 U.S.C. § 281.

3. 18 U.S.C. § 641.

4. 18 U.S.C. § 371.

5. Both appellants carefully preserved error. Under the earlier cases it would seem that only Markham, whose house was searched, would be a person aggrieved by this search. See e. g., Nielson v. United States, 9 Cir., 24 F.2d 802 (1928). However, under McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), reversal as to Markham would require reversal as to Schoeneman also. And see Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894 (1961); Woods v. United States, 99 U.S. App.D.C. 351, 240 F.2d 37 (1956), cert. denied, 353 U.S. 941, 77 S.Ct. 815, 1 L. Ed.2d 760 (1957); Nelson v. United States, 93 U.S.App.D.C. 14, 23, 208 F.2d 505, 514 (1953), cert. denied, 346 U.S. 827, 74 S.Ct. 48, 98 L.Ed. 352 (1953); McKnight v. United States, 87 U.S.App.D. C. 151, 153, 183 F.2d 977, 979 (1950). The same rule applies though the property seized would not be returned since it belongs to the United States. See Hair v. United States, supra, 110 U.S.App.D.C. at 156, n. 12, 289 F.2d at 897, n. 12. Cf. United States v. Pepe, 2 Cir., 247 F.2d 838 (1957); United States v. Chieppa, 2 Cir., 241 F.2d 635 (1957), cert. denied, sub nom. Ivicola v. United States, 353 U.S. 973, 77 S.Ct. 1057, 1 L.Ed.2d 1136 (1957). But compare Wong Sun v. United States, 371 U.S. 471, 491–492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

warrant in reliance upon two affidavits.[6] The first affidavit, signed by an FBI agent, alleged that a "confidential in-formant, who formerly was an employee of the Department of Justice and the Treasury Department of the United

6. AFFIDAVIT

BEFORE Thomas Moncure, United States Commissioner for the Eastern District of Virginia, at Alexandria

HOWARD E. RICHARDSON, being duly sworn, deposes and says:

1. That he is a citizen of the United States over 21 years of age; that he is a Special Agent of the Federal Bureau of Investigation; and that he has cause to believe, and that he does verily believe, that things of value which are the property of the United States, to-wit: service manuals and instruction books, both classified and unclassified, used in the procurement, maintenance and operation of technical equipment by and for the Government of the United States, and documents containing code lettering relating to the procurement of technical equipment for the Government of the United States, are being kept at premises known as 103 Leroy Place, Pine Ridge, Fairfax County, Virginia, a private house, the residence of Garlan Euel Markham, in violation of Sections 641, 201, 793 and 371 of Title 18 of the United States Code.

2. That the information that these things of value are on the premises mentioned above came to your deponent through a confidential and reliable source and consists of the following:

(a) A confidential informant, who formerly was an employee of the Department of Justice and the Treasury Department of the United States, who is now a business executive, and who is believed to be reliable, has furnished an affidavit to a special agent of the Federal Bureau of Investigation stating, in substance, that on February 15, 1961, pursuant to a previous appointment of which a competent officer of the Navy Department had advance notice, he met a man at the Washington National Airport who introduced himself to the informant as Garlan Markham. The informant then went with Markham in Markham's private automobile from the airport to Markham's residence at 103 Leroy Place, Pine Ridge, Fairfax County, Virginia. While en route from the airport to Markham's residence, Markham stated to the informant that he had formed the Washington Procurement Consultants, Inc., located at his home address, 103 Leroy Place, Pine Ridge, Fairfax County, Virginia, and that this corporation had been formed for the purpose of handling payoffs to government personnel. Markham stated to the informant that he, Markham, had access to information from the various defense agencies of the United States Government. On arriving at Markham's residence at 103 Leroy Place, Pine Ridge, Fairfax County, Virginia, Markham took the informant into his house. There he showed the informant various government documents including classified items from the Avionics Section of the Bureau of Weapons, Navy Department, identified by the following markings:

1. "AN/ALD 2
Bu WEPS
6-61 DEL 62"
2. "AN/AQA 3-34"
3. "ASR 3"

On this same occasion, Markham showed the informant a number of sheets containing Navy Department procurement information. After showing these documents to the informant, Markham placed them in a file drawer on the aforesaid premises.

(b) Commander Harry S. Holt, a Classified Information Control Officer of the Navy Department, has informed a representative of the Federal Bureau of Investigation that the manuals shown by the aforesaid Garlan E. Markham to a confidential informant at Markham's residence at 103 Leroy Place, Pine Ridge, Fairfax County, Virginia, on February 15, 1961, as set forth in paragraph (a) supra, are Government documents belonging to the Navy Department, classified "confidential." Commander Holt further stated that as of February 15, 1961, no copies of said manuals have been furnished by the Government and by the Navy Department to potential suppliers in connection with public solicitation for bids.

3. That this affidavit is made to secure a search warrant to search the premises known as 103 Leroy Place, Fairfax County, Virginia, within the Eastern District of Virginia, consisting of the residence of Garlan Euel Markham, and to seize and take in possession all things of value which are the property of the United States found therein and all correspondence, checks, receipts, and other records relating to the obtaining and procuring of such things of value belonging to the United States.

WHEREFORE, your deponent prays that a search warrant may issue to any agent of the Federal Bureau of Investigation, authorizing him to enter in the daytime,

States, and who is now a business executive, and who is believed to be reliable," had "furnished an affidavit to a special agent of" the FBI stating that he had seen certain Government documents in Markham's home on February 15, 1961, 107 days prior to the date of application for the warrant, June 2, 1961.[7] It was further alleged that the documents were of a type which could not legally have been in Markham's possession. The second affidavit, signed by ONI Agent Kingsbury, merely alleged that he had observed a meeting between Markham and the unnamed informant described in the first affidavit on February 15, 1961.

■■ The question of probable cause sufficient for the issuance of a search warrant is, of course, directed in the first instance to the commissioner. But where, as here, the commissioner's judgment is predicated solely on affidavits, a court is not relieved from making its own judgment as to whether the affidavits provide a "substantial basis for him to conclude that [the evidence was] probably present in the [home]." *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). Applying this test, Judge Lord, in another proceeding,[8] has already held the search warrant in suit here invalid. We agree.

with the proper assistance, to the above-named premises and there search for and seize and take into his possession all things of value belonging to the United States found on said premises, and all correspondence, checks, receipts and other records, writings and materials utilized and employed by said Garlan E. Markham in obtaining and procuring such things of value belonging to the United States and all records, writings and materials used or intended to be used by said Garlan E. Markham in furtherance of the commission of violations of Sections 641, 201, 793 and 371 of Title 18 of the United States Code, to the end that the same may be dealt with according to law.

/s/ Howard E. Richardson
Howard E. Richardson

Sworn to before me, and subscribed in my presence this 2nd day of June, 1961.

/s/ Thomas Moncure
UNITED STATES COMMISSIONER

AFFIDAVIT

BEFORE Thomas Moncure, United States Commissioner for the Eastern District of Virginia, at Alexandria

The undersigned being duly sworn deposes and says:

My name is Thomas E. Kingsbury. I am employed as a Special Agent of the Office of Naval Intelligence, Department of the Navy. On February 15, 1961, pursuant to instructions which I received from a superior officer, I was at the Washington National Airport. There I observed a meeting between two persons, one of whom was the confidential informant mentioned in the affidavit of Howard E. Richardson, executed on this 2nd day of June, 1961 before United States Commissioner, Thomas Moncure. The other person was a man whose iden-

tity I did not know at the time, but whom I now know to be Garlan Euel Markham of 103 Leroy Place, Pine Ridge, Fairfax County, Virginia. After their meeting, I observed these two individuals proceed to a private automobile bearing 1960 District of Columbia License EP–953. They got into this automobile and departed from the airport area proceeding in the direction of Alexandria, Virginia. Markham did the driving. I then checked through my supervising agent the registration of the automobile which I have referred to, and I ascertained that it was registered in the name of Garlan Euel Markham.

/s/ Thomas E. Kingsbury
Thomas E. Kingsbury

Sworn to before me, and subscribed in my presence this 2nd day of June, 1961.

/s/ Thomas Moncure
UNITED STATES COMMISSIONER

7. The informant in fact was Heins.

8. *United States v. Sawyer,* E.D.Pa., 213 F.Supp. 38, 41 (1963). There, in holding the warrant invalid, Judge Lord said:

" * * * The affidavit in this case was based in part upon "what the affiant was told by an agent who had, in turn, been told by an informant of what the informant had seen on February 15. The remainder was based upon what the affiant had been told by the agent who had been told by informant of what the informant had been told by the defendant on February 15.

"The only basis in the affidavit for accepting this double and triple hearsay is the allegation that the informant 'is believed to be reliable'. There is no allegation of previously reliable information and no corroboration from other

■ Most striking about the evidence disclosed in the affidavits in this case is the delay of 107 days in applying for a warrant.[9] In determining probable cause for the issuance of a search warrant, time alone, of course, is not controlling.[10] However, we cannot overlook the fact that the Government could cite, and we could find, no case which sustained a search warrant issued more than 30 days after finding of the evidence which constituted the basis for the search. Chief Justice Hughes stated the controlling principle very succinctly:

"* * * The proceeding by search warrant is a drastic one. Its abuse led to the adoption of the Fourth Amendment, and this, together with legislation regulating the process, should be liberally construed in favor of the individual. [Citing cases.] * * * *While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.*" Sgro v. United States, supra, Note 9, 287 U.S. at 210, 53 S.Ct. at 140.[11] (Emphasis added.)

■ Thus the critical question here is whether the affidavits when presented to the commissioner gave probable cause to believe that the Government documents were still on the premises. The Government relies quite heavily upon the nature of the conspiracy ultimately revealed to show that it was entirely probable that the books seen on February 15 were on the premises on June 2. However, the elaborate plot later developed is not described in the affidavits. It is merely alleged that certain books were seen in Markham's house. There is no allegation that the books had not been moved in the intervening three and one-half months or, indeed, that Markham himself had not moved. To support a search warrant the proof supplied "must speak as of the time of the issue of [the] warrant. The commissioner ha[s] no authority to rely on affidavits which have sole relation to a different time and *have not been brought down to date or supplemented* so that they can be deemed to disclose grounds existing when the * * * warrant is issued." Sgro v. United States, supra, Note 9, at 211, 53 S.Ct. at 140. (Emphasis added.) If commissioners are to serve a useful function in protecting citizens against arbitrary searches, probable cause must be determined as of the time the warrant is issued and not with the benefit of hindsight.[12]

■ Moreover, the evidence presented, even if it spoke as of the day of issu-

---

sources of information. There is no allegation that defendant was a known briber or payoff man."

9. At the hearing on the motion to suppress, Richardson submitted an affidavit explaining that the delay was occasioned by the need to investigate carefully and quietly to develop the facts more fully regarding Markham's lack of authority to have the documents. It also recited that Markham was still active at least up to late April, 1961. Had this evidence been brought to the attention of the commissioner, it might have established probable cause as of June 2, 1961. See Sgro v. United States, 287 U.S. 206, 211, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

10. See cases collected in Annotation, 39 A.L.R. 811, 847, as supplemented, 74 A.L.R. 1418 and 162 A.L.R. 1406.

11. And see Manual for United State Commissioners (1948), p. 24:
"* * * A showing to the effect that the property to be seized was at the place to be searched a substantial time before the application is made does not justify the issuance of a search warrant, for the reason that during the intervening period the property may have been moved away. The facts must show that the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance of the search warrant."

12. Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Baysden v. United States, 4 Cir., 271 F.2d 325, 327 (1959); United States v. Sims, M.D.Tenn., 201 F.Supp.

ance of the warrant, is borderline. All the evidence indicating the documents were in Markham's house was hearsay. Agent Richardson's affidavit before the commissioner was predicated on still another affidavit before another agent. In establishing probable cause, of course, the commissioner may rely upon hearsay information "so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Jones v. United States, supra, 362 U.S. at 269, 80 S.Ct. at 735.[13] But here the corroboration only attempts to show that the informant is reliable. Briefly, it indicates that the undisclosed informant is a former Government employee, that he is now a business executive, that he made his statement under oath, and that he did have a meeting with Markham. The statement in the affidavit that he "is believed to be reliable" is ambiguous, apparently meaning that the FBI as an entity believed him reliable, but not committing the affiant.[14] Assuming, without deciding, that the affidavits would be otherwise sufficient, in view of the great delay we cannot uphold the determination that probable cause existed on the date the warrant issued.[15] Therefore, the motion to suppress should have been granted.

■ Since the case will have to be retried, one additional matter need only be mentioned. The court inadvertently failed to caution the jury against reading newspaper accounts of the trial. During the trial a news story concerning the proceedings appeared in the Washington Evening Star, which concluded: "Markham has also been indicted in Philadelphia where he is charged with misuse of classified material, bribery, theft and conspiracy in a related case." The appearance of this article was promptly called to the attention of the trial judge and request was made that the jurors be interrogated to see if any had read the story. The court refused to do so on the ground that such interrogation would only emphasize the article. We have repeatedly pointed out that "in all criminal cases whenever jurors are permitted to separate, the court should invariably admonish them not to communicate with any person or allow any person to communicate with them on any subject connected with the trial, and not to read published accounts of the course of the trial." [16] (Emphasis added.) This incident once more points up the need for care in this regard.

Reversed.

405, 408–409 (1962); United States v. Walters, W.D.Ark., 193 F.Supp. 788, 791 (1961).

13. See also Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

14. A statement that the affiant believes the informant to be reliable has not been required if other evidence reasonably corroborates the hearsay. See United States v. Woodson, 6 Cir., 303 F.2d 49 (1962); United States v. Spears, 6 Cir., 287 F. 2d 7 (1961); Ward v. United States, 108 U.S.App.D.C. 282, 281 F.2d 917 (1960), cert. denied, 365 U.S. 837, 81 S. Ct. 751, 5 L.Ed.2d 746 (1961); Hall v. United States, 7 Cir., 279 F.2d 389 (1960), cert. denied, 364 U.S. 920, 81 S. Ct. 285, 5 L.Ed.2d 260 (1960). Cf. statement of Judge Bazelon in Jones v. United States, 105 U.S.App.D.C. 326, 329–332, 266 F.2d 924, 927–930 (1959); Christensen v. United States, 104 U.S. App.D.C. 35, 36, 259 F.2d 192, 193 (1958) (dissenting opinion). However, the acceptance of hearsay evidence repre-

sents a dangerous relaxation of the standards protecting homes against oppressive searches and we should not strain to sustain questionable uses of it. Though his views did not prevail in that case, it would be difficult to improve on the discussion of Mr. Justice Douglas in Draper v. United States, supra, Note 13, 358 U.S. at 314, 79 S.Ct. at 333.

15. In doubtful cases, the fact that the commissioner issued the warrant is persuasive that probable cause existed. See United States v. Nicholson, 6 Cir., 303 F. 2d 330, 332 (1962), cert. denied, 371 U.S. 823, 83 S.Ct. 43, 9 L.Ed.2d 63 (1962); United States v. Ramirez, 2 Cir., 279 F.2d 712, 716 (1960). However, we feel the facts here, particularly the long unexplained delay, take the situation beyond the area of doubt.

16. Coppedge v. United States, 106 U.S. App.D.C. 275, 278, 272 F.2d 504, 507 (1959), cert. denied, 368 U.S. 855, 82 S.Ct. 92, 7 L.Ed.2d 52 (1961), and cases cited therein.