**UNITED STATES of America ex rel. Dennis M. LUNDERGAN, Relator-Appellant,**

v.

**Daniel McMANN, Warden of Auburn Prison, Auburn, New York, Respondent.**

No. 619, Docket 32935.

United States Court of Appeals Second Circuit.

Argued June 5, 1969.

Decided Aug. 29, 1969.

Matthew Muraskin, Mineola, N. Y. (James J. McDonough, Legal Aid Society of Nassau County, N. Y., Daniel J. Dillon, Mineola, N. Y., of counsel), for relator-appellant.

Burton Herman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

Dennis M. Lundergan, indicted in 1965 in Nassau County, New York, for grand larceny and burglary, moved in the County Court to suppress the allegedly stolen goods, a maroon and gold jewelry box and a metal strong box, which had been seized from his wife's automobile while it was in his possession. On June

1, 1966, the motion was denied after a hearing. Lundergan was allowed to plead guilty to the lesser crimes of attempted grand larceny in the second degree in regard to the theft of the strong box and petit larceny in regard to the theft of the jewelry box. He was sentenced to 2½–5 years on the attempted grand larceny conviction and received a suspended sentence on the petit larceny conviction. His appeal from the judgment of conviction challenging the refusal to suppress, New York Code of Criminal Procedure § 813–c, resulted in an affirmance without opinion, People v. Lundergan, 29 A.D.2d 736, 287 N.Y.S. 2d 349 (2d Dept. 1968). Leave to appeal to the Court of Appeals was denied. Lundergan thereupon filed a petition for habeas corpus in the District Court for the Eastern District of New York. After a hearing before Judge Abruzzo, the writ was denied.

Lundergan was a delivery man for a Long Island furniture firm. A customer to whose home he and an associate had delivered beds complained to Lundergan's employer of the loss of a jewelry box from her bedroom. The employer went to the car used by Lundergan, although actually owned by his wife, and observed through a window a small box, which fit the customer's description of the missing jewelry box, sticking out from under the car seat. The employer notified the police, told them the customer's story and had them observe the box. He then located Lundergan whom he summoned to the warehouse.

At this point there is a divergence of testimony. The version of the detective who testified was that when Lundergan arrived he was told that the police suspected that his car contained stolen goods. Lundergan denied any knowledge of such goods. Another detective then told him, in effect, that in that case he would have nothing to hide and asked whether he would consent to a search of the car. Lundergan immediately stated that he had no objection, and the detective wrote out a consent form which Lundergan read and signed. The employer corroborated this testimony. The police and Lundergan then went to the car, which was parked near the warehouse. Lundergan unlocked the door on the passenger side, and a patrolman removed the jewelry box. The detective took the key, opened the trunk and found a metal strong box which was later found to have been stolen. Lundergan was then taken to the police station and booked. Petitioner's version is that he refused consent for some twenty minutes after the police first asked for it. Finally, after the police told him that they were looking for a gun in his car and that they would let him go if they did not find it, he scrawled his name on the bottom of the consent form, doing so in a manner totally unlike his normal signature in order to demonstrate that it was done involuntarily.[1] Accepting the version of the detective and the employer as true, the district court found the search and seizure to have been lawful both as incident to an arrest made on probable cause and as resting on a valid consent.

For us to uphold the search and seizure as incident to a lawful arrest would require us to consider both whether Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), applies to convictions that had already become final, see Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731, 14 L.Ed.2d 601 (1965), and whether, even if it does not, the Supreme Court does not regard pre-*Chimel* law as requiring a closer relationship between the places of the arrest and of the search than this court had thought to be de-

---

1. Petitioner also contended that between the time he left the car on the morning of the search and the time he returned to it just before the search, the front vent window had been broken and the door had been unlocked, as if the police had searched the car before he arrived. The testimony as to the condition of the car was corroborated by the testimony of Lundergan's ex-wife. The district judge rejected their testimony in light of the contradictory testimony of the detective and pictures showing the car to have been undamaged when it was returned to Mrs. Lundergan two days later.

manded. Compare United States v. Francolino, 367 F.2d 1013, 1017 (2 Cir. 1966), cert. denied, 386 U.S. 960, 87 S. Ct. 1020, 18 L.Ed.2d 110 (1967), and United States ex rel. Mahoney v. La Vallee, 396 F.2d 887 (2 Cir. 1968), cert. denied, 395 U.S. 985, 89 S.Ct. 2137, 23 L. Ed.2d 774 (1969), with the discussion in *Chimel*, 395 U.S. at 764–765 and n. 10, 89 S.Ct. 2034, and the decision in Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969). We have no need to do this since we affirm the denial of the writ on the basis of the finding of consent.[2]

■■ It is true enough, as this court has held, that consent to a search is not to be lightly inferred. United States v. Viale, 312 F.2d 595, 601, cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963); United States v. Como, 340 F.2d 891, 893 (1965). As said in United States v. Smith, 308 F.2d 657, 663 (2 Cir. 1962), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963), "an accused's voluntary consent [to a search] must be proven by clear and positive evidence. * * * Moreover, to be voluntary, a consent must have been unequivocal, specific, and intelligently given." However, as the *Smith* case shows, the mere fact that a suspect is under arrest does not negate the possibility of a voluntary consent. Neither does the suspect's knowledge that the search will almost certainly demonstrate his guilt. United States v. Gorman, 355 F.2d 151, 158–159 (2 Cir. 1965), cert. denied, 384 U.S. 1024, 86 S. Ct. 1962, 16 L.Ed.2d 1027 (1966). As we there said:

> "Acceptance of this contention would mean that expressions of consent could relieve officers of the need of obtaining a warrant only when the speaker was not aware that the search would disclose damaging evidence—a fact

usually not within the officers' knowledge. Such a ruling not only would almost destroy the principle permitting a search on consent but would enable experienced criminals to lay traps for officers who, relying on the words of consent, failed to secure a search warrant that would have been theirs for the asking. Where, as here, no force or deception was either used or threatened, we see no reason why a court should disregard a suspect's expression of consent simply because efficient and lawful investigation and his own attempt to avoid apprehension had produced a situation where he could hardly avoid giving it."

Here, according to the testimony of one of the detectives and the employer, which the judge was justified in accepting, Lundergan freely signed a consent; on the evidence which the court properly credited, there was nothing to indicate that the officers engaged in trickery or threatened they would search whether he consented or not, contrast Bumper v. North Carolina, 391 U.S. 543, 546–550, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

■ We recognize the possibility that the Supreme Court may determine that a consent to a search is invalid in the absence of warnings similar to those required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at least with respect to persons in custody as the State asserts Lundergan to have been, see Consent Searches: A Reappraisal After Miranda v. Arizona, 67 Colum.L.Rev. 130, 146–48 (1967). However, as in the "line-up" decisions, we would not expect that any such ruling would be made applicable to a case where the conviction had already become final. Contrast Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), with United States v. Wade, 388 U.S.

2. We likewise have no occasion to consider whether the seizure of the jewelry box could be justified under the "plain view" doctrine, see Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), even though, in contrast to that case, the car was locked and entry was for the purpose of seizure. The count on which Lundergan was given a prison sentence related to the seizure of the strong box.

**522**

218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and with Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

Affirmed.