## Commonwealth v. Prusinski

*John M. McLure,* for Commonwealth.
*Thomas J. Profy, 3rd,* for defendant.

BECKERT, J., May 20, 1971.—Joseph Daniel Prusinski, defendant, was indicted as of the above term and number for the offense of possession of narcotics. The alleged offense against him, as set forth in the indictment, occurred on February 25, 1970. The bill was approved by the grand jury. Prior to trial an application on behalf of defendant was presented to suppress evidence illegally seized, namely, the marihuana which forms the basis of the prosecution.

The facts leading to the investigation and subsequent arrest of the defendant, as developed at the time of the suppression hearing, can be summarized as follows:

Defendant is a veteran and shortly prior to his arrest had returned to the United States from Vietnam. As is the practice of the custom and postal authorities, each package or parcel to be delivered to an address in the United States from southeast Asia is inspected by the authorities and when suspected of containing any narcotic or dangerous drug is opened. Without going into great detail as to this aspect of the case, it was determined that a certain parcel was being forwarded, by mail, to a "Keven Prusinski" at 720 Winder Drive, Bristol Township, Bucks County. No such person as Keven Prusinski has been identified on this record, except by speculation that this is a fictitious or assumed name used by defendant. The above address is occupied by a Prusinski family.

While this parcel was in the hands of the postal authorities in Trenton, N. J., it was opened and as the results of tests performed, it was ascertained that some of the contents were, in fact, marihuana. Detective Dunn of the Bristol Township police was advised of this by the postal authorities and, as a result thereof and based upon other information relayed to him, proceeded, on February 24, 1970, to the office of Justice of the Peace Robert S. Campbell, for the purpose of procuring a search warrant for 720 Winder Drive, Bristol Township, Bucks County, Pa., and to seize at that address, from a person designated as Keven Prusinski, marihuana. In addition to the information contained in the written affidavit, Detective Dunn, while under oath, related the additional information to the justice of the peace that at the time of his, Dunn's, testimony the parcel addressed to Keven Prusinski had not yet been delivered, but was going to be imminently delivered to the premises previously mentioned.

Defendant does not contest that these facts were related to the issuing authority, but to the contrary, relies upon those facts as the basis for his application to suppress. It is the contention of defendant that no probable cause existed for the issuance of the search warrant as it was issued for articles specified therein that were not then present at the location set forth in the warrant.

At 2:41 p.m. on February 24, 1970, approximately three hours after the warrant issued, the postal authorities delivered a parcel to the address hereinbefore specified. As a result of this delivery and pursuant to the search warrant, a search of the home was shortly thereafter made and the marihuana recovered from the delivered parcel.

The sole question before us is the legal efficacy of

a search warrant issued for the seizure of things, the mere possession of which constitutes a crime, but which articles are not physically located at the place to be searched at the time the warrant is issued, but the issuing authority has been presented credible and reliable facts, under oath, to make an independent determination that the articles will be so located when the warrant is executed.

We have been unable to find any appellate court decisions in this Commonwealth on this subject, but have read Judge Atkins' opinion in Commonwealth v. Rehmeyer, 29 D. & C. 2d 635 (1962), wherein the facts reveal that a member of the Pennsylvania State Police at 6:15 p.m. procured a search warrant for a "stag show" that was going to be held about four hours later. There was no dispute but that the stag show was not in process at the time the warrant was issued. Therefore, the basis for any criminal action, i.e., alleged obscene activities, did not exist at that time. Based on the above, Judge Atkins, after citing numerous cases, held that the search warrant was invalid and accordingly suppressed the evidence obtained by the use thereof. We are inclined to respectfully disagree with the holding of that case. We believe that recent developments in this area of the law would logically lead one to a contrary conclusion in a factual setting with which we are here confronted.

Perhaps, as a starting point, it would be well to examine the very foundation upon which defendant's application to suppress must be based. The foundation we know to be the Fourth and Fourteenth Amendments of the United States Constitution and section 8 of article 1 of the Constitution of the Commonwealth of Pennsylvania. In reading those sections, the word which we find to be pivotal is "unreasonable" as the protection that is guaranteed is against "unreasonable

searches and seizures" and provides that no warrant shall issue but on probable cause supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized.

In our research we have found, in addition to the cases cited by Rehmeyer case, supra, a number of other decisions containing language to the effect that a search warrant should issue only upon showing that probable cause exists to believe an unlawful situation existed, or was occurring at the time the warrant was sought: Sgro v. United States, 287 U. S. 206 (1932); Schoeneman v. United States, 317 F. 2d 173 (D. C., 1963); State v. Taylor, 246 A. 2d 898, 900 (Conn. Superior Ct., 1968); Curtis v. United States, 263 A. 2d 653, 655 (D. C., 1970); Commonwealth v. Shaw, 217 Pa. Superior Ct. 163, 167 (1970).

A reading of these cases points out that the problem before the court in each instance was whether, due to the passage of time, the information in support of probable cause had grown stale and for that reason no probable cause existed. That is not the question we have before us, but the converse thereto, namely, whether or not the information conveyed to the issuing authority was not "yet ripe" or perhaps "too fresh."

The courts have encouraged law enforcement officers to procure warrants wherever possible prior to a search. Warrantless searches have been subjected to most careful judicial scrutiny and in many instances rendered invalid due to the absence of a search warrant. In certain phases of law enforcement or detection, and we conclude that traffic in narcotics falls within this area, speed on the part of law enforcement officials is required if they are to be successful. Therefore, the prime motivating reason for a police officer to proceed without the benefit of a search warrant, and possibly, therefore, be subjected to having

the evidence seized suppressed, is the time factor entailed in procuring a search warrant. Justices of the peace are not always available and with the advent of the district justice the "old justices of the peace," that is, two for each political subdivision, have been and will be completely phased out, thereby placing upon the district justice a considerably greater volume of work and a corresponding increase in the time factor of procuring a search warrant.

Therefore, we must ask ourself whether in today's society there is not a demand put upon the courts to make every effort to assist law enforcement officers, who are complying with the pronouncements issued by our courts.

Under the factual background such as presented here, if we conclude that a search warrant could not issue until there is physical delivery to the named premises, we would be requiring the law enforcement population to procure the warrant after delivery has been made, well knowing that narcotics may be dispensed to others or otherwise disposed of during this interval, or to encourage them to proceed without benefit of search warrant and possibly have the search and the fruits thereof later suppressed on the ground that "ample time existed within which to procure a warrant."

A reading of the applicable sections of the United States and our Commonwealth's Constitutions did not lead us to find any language which specifically prohibits the issuance of a warrant to search at a future date. Nor do we find it to be "unreasonable" if the search is to be performed when the alleged crime is then being committed.

We believe the test that should be applied in determining the validity of the warrant is not whether the thing sought to be seized was so located at the premises named in the search warrant at the time of the issu-

ance thereof, but whether there was demonstrated to the issuing authority probable cause to believe that the article sought to be seized would be so located at the time the warrant was to be executed and that execution thereof would take place within a reasonably prompt period of time after issuance.

We find some comfort in this position in the language of our United States Supreme Court in Katz v. United States, 389 U. S. 347. There the "thing" sought to be "seized" was conversations. At the time that a search warrant would be issued for such, the conversations certainly would not be in existence at the place to be searched, but probable cause would have to be demonstrated that such conversations would be held at a reasonable, foreseeable time in the immediate future. The following language from the Katz case, at page 354, we deem pertinent:

". . . it is clear that this surveillance [electronic surveillance] was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it [the electronic surveillance] *was to proceed,* and clearly apprised of the precise intrusion it would entail, could constitutionally have authorized, . . . the . . . search and seizure." (Italics supplied.)

We further make reference to the case of United States ex rel. Beal v. Skaff, 418 F. 2d 430 (1969), as a case which is factually on all fours with the matter before us and in which the warrant and items seized thereunder were found to be valid and nonsuppressable. In Beal, the problem of the passage of an undue amount of time between issuance and execution of a warrant was discussed. It was correctly pointed out in Beal that the time between the two acts gave rise to a possible loss of judicial control over the property to be seized, i.e., the property seized might be articles

other than specified in the warrant. Such is the rationale for determining that probable cause did not exist when the basis of the affidavit is stale information, but this concern is not present when still "green facts" are presented under oath to the issuing authority. Therefore, in the Beal case, which dealt with a narcotic situation similar to here present, the court, in upholding the validity of the search warrant, stated, at page 433, as follows:

"Thus, there was probable cause to believe that the parcel would be delivered 19 minutes from the time of issuance, and probable cause to believe that the warrant, when executed forthwith, could not be executed until after such delivery took place. There was, then, no danger that the property seized would be other than that specified in the affidavit upon which the warrant was issued. . . . Moreover, the nature of the article to be seized — the very real possibility that delay might have resulted in its disposal or concealment — compelled quick action by the magistrate. Confined to these facts, we are of the opinion that the warrant and its execution were constitutionally valid."

We likewise so find and, therefore, make the following

## FINDINGS OF FACT

1. A hearing was held pursuant to the applicable rules of criminal procedure, there being present at the time of the hearing the defendant, counsel for defendant, counsel for the Commonwealth, court officers and witnesses. All other persons were excluded from the courtroom.

2. Testimony was presented and other evidence received from which we make the following findings:

(a) The issuing authority had presented to him, under oath, credible and reliable evidence to form an independent determination that probable cause existed for the issuance of the search warrant and for

the execution of the search warrant at a place where the articles sought to be seized would then be located;

(b) A search of the premises, namely, 720 Winder Drive, Bristol Township, Bucks County, Pa., took place after the authorities made known the contents of the warrant and announced their purposes to the occupants of the premises;

(c) As a result of the search, certain items were seized as is shown on the return of the search warrant.

Accordingly, we enter the following

### CONCLUSIONS OF LAW

1. The search warrant was properly issued as prescribed by law.

2. The issuing authority made an independent finding based upon probable cause.

3. The evidence presented to the issuing authority was both reliable and credible.

4. Defendant's constitutional rights were not violated.

### ORDER

And now, May 20, 1971, the application to suppress is denied and refused. The record of the proceedings and the transcript thereof are to be impounded and not to be used for any purpose except by further order of this court.