**UNITED STATES of America,**
**Appellant,**

v.

**Robert CANDELLA, Appellee.**

**No. 180, Docket 72–1739.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 1972.

Decided Nov. 9, 1972.

Stephen Michael Behar, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., David G. Trager, Asst. U. S. Atty., on the brief), for appellant.

Gustave H. Newman, Brooklyn, N. Y. (Evseroff, Newman & Sonenshine, Brooklyn, N. Y., on the brief), for appellee.

Before HAYS, OAKES and TIMBERS, Circuit Judges.

HAYS, Circuit Judge:

Robert Candella was indicted on a charge of knowingly transporting handguns in interstate commerce in violation of 18 U.S.C. § 922(a)(3). He moved to suppress certain handguns which had been seized at his home at the time of his arrest. During the hearing on his motion he asked that the motion be modified to include a request for the suppression of three inculpatory statements (two oral and one written) which he had made on the morning of his arrest.

The district court entered an order suppressing the handguns and the defendant's written confession. The United States appeals pursuant to 18 U.S.C. § 3731.

I. *Factual Background*

Candella was arrested at his home at approximately 7:30 on the morning of February 17, 1971, by agents Wessler, D'Atri and Dugan of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department. After Candella had been given the Miranda warnings he was asked whether he had any of the firearms he was accused of purchasing in Maryland and transporting to New York. According to the undisputed findings of fact of the district court, Candella said, " 'Some of them are there,' pointing to a carton about five feet or so from where he was standing, and Mr. Wessler with Mr. Dugan looked into the box and saw that it did have guns, which Mr. Duggan [sic] then took under his control, and Mr. Wessler turned back to Mr. Candella and asked whether he had any others, and Mr. Candella, half turning, indicated a desk or other piece of furniture some five feet away from him in another direction, and Mr. D'Atri went there and opened a drawer and found additional firearms in it. 29 firearms or thereabouts were found, all told. Apparently 10 or so in the desk and 19 or so in the carton."

At approximately 8:30 A.M. Candella was taken in a Government vehicle to the A.T.F. office. There, after some discussion of the facts, Candella signed the statement which the district court ordered suppressed. Candella was then taken to the office of the United States Attorney for the Eastern District of New York where he arrived at approximately 11:00 A.M. Counsel was then obtained for him and he was arraigned at approximately 11:30 A.M.

II. *The Suppression of the Handguns*

Candella's conduct when he was arrested constituted consent to the

seizure of the handguns. See United States v. Rothberg, 460 F.2d 223 (2d Cir. 1972);[1] United States v. Gaines, 441 F.2d 1122 (2d Cir.), vacated and remanded on other grounds, 404 U.S. 878, 92 S.Ct. 223, 30 L.Ed.2d 159 (1971). Candella, after being informed of his rights, pointed to the exact spots where the guns were located and told the officers where they were. Here, as in *Rothberg,* there is "no evidence . . . of coercion or other circumstances that would render the consent invalid." 460 F.2d at 224. Consent was "freely and voluntarily given." See Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L.Ed.2d 797 (1968); United States v. Fernandez, 456 F.2d 638 (2d Cir. 1972). "[T]he mere fact that a suspect is under arrest does not negate the possibility of a voluntary consent. Neither does the suspect's knowledge that the search will almost certainly demonstrate his guilt." United States ex rel. Lundergan v. McMann, 417 F.2d 519, 521 (2d Cir. 1969).

■ In addition to the factor of consent to the seizure of the guns, they should have been held admissible because in practical effect they were in "plain view" of the agents. The agents were legally in Candella's home for the purpose of making an arrest for which they had a valid arrest warrant. Their attention was directed by Candella to the very spot where the guns were situated. If the containers had been open there would be no doubt about the propriety of the seizure. Candella's statement that the guns were in the containers was the equivalent of his opening the containers for the agents' inspection. "Where . . . the arresting officer inadvertently comes within plain view of a piece of evidence, *not concealed,* although outside of the area under the immediate control of the arrestee, the officer may seize it, so long as the plain view was obtained in the course of an appropriately limited search of the arrestee." Coolidge v. New

Hampshire, 403 U.S. 443, 465–466, n. 24, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (emphasis added). Here, once the appellee told the agents where the guns were, they were no longer "concealed" and it was reasonable for the agents to seize them. The evidence was, in effect, in the "plain view" of the agents. See United States v. Titus, 445 F.2d 577 (2d Cir.), cert. denied, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971).

The contrary holding of the district court must be reversed.

### III. *The Suppression of the Confession.*

■ The district court ordered the suppression of the last of three statements made by Candella on the morning of his arrest. That statement was a written confession which merely reiterated Candella's previous oral admissions. The court believed that the delay in bringing the defendant before a magistrate for arraignment was violative of Rule 5(a) of the Federal Rules of Criminal Procedure which mandates that "[a]n officer making an arrest under a warrant issued upon a complaint . . . shall take the arrested person without *unnecessary* delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States." Fed.R.Crim.P. 5(a) (emphasis added).

We hold that the time that elapsed between arrest and arraignment was not unreasonably long. See United States v. Price, 345 F.2d 256 (2d Cir.), cert. denied, 382 U.S. 949, 86 S.Ct. 404, 15 L. Ed.2d 357 (1965). The delay of less than four hours was for the proper purposes of routine processing such as allowing Candella to get dressed, traveling to the A.T.F. office, and fingerprinting and photographing him, and of reducing Candella's prior oral admissions

---

1. Because our decision in the *Rothberg* case was handed down three months after the hearing in the instant case it is understandable that it played no part in the decision below.

to writing. These activities were not "unnecessary" within the meaning of Rule 5(a). See United States v. Collins, 462 F.2d 792, 795–796 (2d Cir. 1972); 18 U.S.C. § 3501(a) and (b).

We hold that both the handguns seized in the defendant's apartment and his written confession are admissible into evidence at trial.

OAKES, Circuit Judge (dissenting):

I am forced to dissent from a portion of the majority opinion and would affirm the district judge's orders to suppress the handguns. It is necessary to state some additional facts to crystallize the issues.

First, official investigation of Candella was based upon information obtained from his brother-in-law in August, 1970. This information specifically included the fact that Candella had illegally purchased guns and had those guns in his residence. The federal agents did not obtain an arrest warrant for Candella until February 10, 1971. This was based partly upon the information previously supplied by Candella's brother-in-law. The arrest warrant was not executed until one week after it was obtained, February 17, 1971, amply supporting the district court's finding that "this case was not at any time one that could be called urgent or exigent or one that called for sudden action or precipitous action."

Second, Candella's vision is very much impaired and he is unable to read. While Candella was read a card purporting to explain his *Miranda* rights, the district court raised a question as to whether or not the statement read adequately explained that the appellee had a right to have an attorney present during questioning.

The majority finds that the search was consented to even though the issue was not presented to the district court. Indeed, the United States Attorney said, "Your Honor, we are not advocating a consent search here." While the district court did make a full fact-finding on the circumstances of the seizure, it never has been given an opportunity to consider the inferences to be drawn from the facts on the question of consent. Judge Mansfield objected in dissent in United States v. Rothberg, 460 F.2d 223, 225 (2d Cir. 1972), to this court's substituting its findings of fact for those of the district court even though the district court's findings are not "clearly erroneous." Here, the intrusion on the sphere of the district court seems even more serious as that court has not had an opportunity to pass upon the issue at all. There might be additional inquiries made or facts found on the consent issue had the Government presented its claim below. Here an appellate court based solely on the "cold transcript," United States v. Rothberg, *supra* at 225 (dissenting opinion), is making a finding on the issue of consent without benefit of the district court's consideration of the matter.

The Government justifies its failure to raise the issue below on the basis that *Rothberg* had not yet been decided. But even if *Rothberg* were directly in point there were many cases which dealt with the doctrine of consent in this circuit that predated it. *E. g.*, United States ex rel. Lundergan v. McMann, 417 F.2d 519 (2d Cir. 1969); United States v. Smith, 308 F.2d 657 (2d Cir. 1962), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L. Ed.2d 716 (1963). Thus the Government was certainly not unaware that a consent claim could be made.

Even assuming that the consent issue were properly before the court, it should be noted that the burden is on the prosecutor to show the consent was "freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Otherwise we would undermine the general requirement that the police obtain a warrant and interpose the judgment of an impartial magistrate before they invade a person's privacy. Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Here the specific *Miranda* warnings given to the appellee were of questionable utility in making him aware that he had legal rights under the circumstances. He was surely frightened by the presence of three strangers in his house, whose credentials he could not check, claiming authority to arrest him. While it is true that the fact of arrest has been held not to negate the possibility of voluntary consent, United States ex rel. Lundergan v. McMann, *supra,* 417 F.2d at 521, the fear and confusion of an individual, particularly of a nearly blind person, that results from being confronted with authority must be taken into account. Indeed, it might be argued that a warrantless search cannot be validated by consent absent a specific warning to the individual that he has a right not to have his premises searched.

In United States v. Rothberg, *supra,* the court found that a defendant consented to a search of his basement. There was testimony in that case, however, which to be sure the trial court rejected but the appellate court apparently credited, that the defendant asked the police to go to the basement and get his jacket because it was cold outside. *See* 460 F.2d at 224. In other words, *Rothberg* can be limited to the circumstance where the defendant, without any police prompting, authorizes the invasion of his privacy. Here, the appellee's gestures pointing to the location of the guns was done at the behest of the arresting officers. To find consent when the defendant acts with police solicitation would encourage the police not to obtain search warrants and to rely on trying to coax frightened and handicapped individuals in a perplexing situation to waive their constitutional rights.

Here, the grounds for not obtaining a search warrant will not withstand scrutiny. As the district court found, there was no emergency or other exigent circumstance. The agents knew that they were looking for illegally-purchased guns and that the guns were likely to be in appellee's apartment. The principal justification offered by the Government for not obtaining a warrant was that the seven-month-old information from Candella's brother-in-law was too stale to support it. *See, e. g.,* Schoeneman v. United States, 115 U.S.App.D.C. 110, 317 F.2d 173, 177 (1963) (107-day-old information held too stale). But the information was paradoxically not too stale to justify an arrest warrant. What the Government tried to do was convert the stale information on which the arrest warrant was based into a search warrant it apparently thought it could not otherwise obtain. No good reason appears why the Government did not simply try to update the information from Candella's brother-in-law. There was no showing, for example, that they did not know the brother-in-law's whereabouts. The Government should not be rewarded for sloppy detective work by the admission of this evidence.

As indicated above, the agents did not have a good reason for not obtaining a search warrant. I think under *Coolidge* such a justification is a prerequisite to the "plain view" exception applied by the majority here. Exceptions to the warrant requirement of the fourth amendment are "jealously and carefully drawn," and there must be a showing of exigent circumstances to justify a warrantless search. 403 U.S. at 455, 91 S.Ct. 2022, 29 L.Ed.2d 564. There are none here.

The same argument can be reformulated another way. Under *Coolidge,* a "plain view" seizure must be "inadvertent" to be justified. If "the discovery is anticipated," and "the police know in advance the location of the evidence and intend to seize it," *id.* at 470, 91 S.Ct. at 2040, the discovery is not inadvertent. Here, the agents had information the guns were in Candella's apartment and intended to seize them if they came upon them. Thus the discovery of the guns was not inadvertent and the agents should have obtained a warrant.

The district court's suppression order as to the handguns should be affirmed.